## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PAUL MORGAN PHOTOGRAPHY, LLC, | ) | |
| | ) | Case No.:  15-CV-11435 |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | |
| CP/AJ HOTEL LINCOLN PARK MANAGER, | ) | **JURY TRIAL DEMANDED** |
| LLC, JOIE DE VIVRE HOSPITALITY, LLC, | ) | |
| W-AJ HOTEL LINCOLN VII, LLC, and | ) | |
| BOKA RESTAURANT GROUP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiff Paul Morgan Photography, LLC ("Plaintiff") for its complaint against CP/AJ Hotel Lincoln Park Manager, LLC, Joie De Vivre Hospitality, LLC, W-AJ Hotel Lincoln VII, LLC, and Boka Restaurant Group, LLC, states as follows.

### PARTIES

1.    Paul Morgan Photography, LLC is a Wisconsin limited liability company with its principal office at 437 W Aspen Dr. #5 Oak Creek, WI 53154.

2.    CP/AJ Hotel Lincoln Park Manager, LLC ("CP/AJ") is an Illinois limited liability company with its principal office at 133 N. Jefferson St., Chicago, Illinois.

3.    Joie De Vivre Hospitality, LLC ("JDV") is a limited liability company registered in the State of Illinois with its principal office at 530 Bush Street, San Francisco, California.

4.    W-AJ Hotel Lincoln VII, LLC ("W-AJ") is a limited liability company registered in the State of Illinois with its principal office at 900 N. Michigan Avenue, Chicago, Illinois.

5.    Boka Restaurant Group, LLC ("Boka") is an Illinois limited liability company with its principal office at 813 W. Randolph Street, Chicago, Illinois.

## JURISDICTION AND VENUE

6.     This court's jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1338 because this case arises from claims of copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.  Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 over all other claims because they are so related to the claims in this lawsuit within the court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (d), and § 1400(a), because the defendants reside and can be found in this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.  Further, the Defendants each have contacts in this district sufficient to subject them to the personal jurisdiction of this district if this district were a separate state.

## FACTS

**I.     Morgan's Contract with CP/AJ to Take Photographs of and Around the Hotel Lincoln Property, CP/AJ's License to Use the Photographs, and the Initial Production of the Photographs at Issue.**

8.     In 2010, CP/AJ bought the Hotel Lincoln property at 1816 N. Clark Street, Chicago, Illinois.  Thereafter, CP/AJ renovated the Hotel Lincoln.

9.     CP/AJ contracted with JDV to manage the Hotel Lincoln.  JDV served the interests of CP/AJ and, in that capacity, was CP/AJ's agent.

10.     On December 15, 2011, CP/AJ entered into a contract with Paul Morgan ("Morgan") for photography services (the "Contract").  The Contract is incorporated herein and attached hereto as Exhibit A.

11.     Paragraph 14 of the Contract states:

The Photography commissioned hereunder is solely for usage of the images as specifically outlined **in the attached estimate** and for no other purposes. The Photographer hereby solely grants the limited right to use the images during the term of this Agreement in the territory described for such purposes and no others, additional usage rights must be agreed upon in writing with the Photographer in advance of **any** such usage. The usage rights granted hereunder shall include the right to use the images in presentations, portfolios, exhibitions and professional competition entries so long is no compensation is derived there from by the client. If the images are reproduced in architecture or design magazines, Photographer's then current usage fees as determined by the Photographer are due from the publishers. No outside user may procure Paul Morgan photography from CPAJ Hotel Lincoln Park Manager, LLC without the prior written permission from the Photographer.

(Exhibit A ¶ 14) (emphasis added).

12.     Paragraph 15 of the Contract states:

The rights granted hereunder to CPAJ Hotel Lincoln Park Manager, LLC shall not be assignable nor transferable in any manner whatsoever, without the consent of the Photographer. Any assignment or transfer in breach of this provision shall be deemed to be an immediate reversion of all rights granted hereunder back to the Photographer without any further notice or action necessary to confirm the said reversion. In such event, any and all of the images in whatever form, shall be immediately returned to the Photographer. The Photographer shall be entitled to any and all damages in connection with any further use thereafter. Such damages shall include without limitation reasonable attorney's fees incurred in connection with the enforcement of the Photographer's rights hereunder.

(Exhibit A ¶ 15.)

13.     The Estimate (redacted) referenced in Paragraph 14 of the Contract is included as

page 2 to Exhibit A to this Complaint, and is incorporated herein.

14.     The usage rights set forth on the Estimate (the "Usage Rights") grant the

following usage to CP/AJ of the images taken by Morgan:

Length of Use:  Unlimited
Description/Rights Granted/Usage:
Images described above licensed for use by CPAJ Hotel Lincoln Park Manager, LLC.  Usage includes – Portfolios, presentations, newsletters, electronic (home website), business & promo cards, editorial inquiries & professional competitions (photo credit attached to photo).  Any additional usage requires prior written agreement and payment of additional fees.  Photographer relinquishes all liability

for all property (or other) damage incurred as a result of, or in relation to, the photographing of the above listed property. Invoice payable upon receipt. Rights granted only upon full payment. Payment of invoice and/or use of photos constitutes acceptance of all terms. Copyright remains exclusive property of the photographer.

(Exhibit A.)

15.     Neither the Contract nor the Usage Rights grant JDV, W-AJ, or Boka the right to use the Images.

16.     The electronic use of the Images by CP/AJ is limited to CP/AJ's home website.

17.     The Usage Rights do not authorize use of the Images on JDV's home webpage or Boka's home webpage.

18.     In December 2011, Morgan took photographs on and around the Hotel Lincoln property pursuant to the Contract.

19.     Around December 2011, CP/AJ selected eight photographs for which it purchased usage rights pursuant to the Contract (the "Photographs"). The Photographs are attached to this Complaint as Exhibit B. Morgan delivered the Photographs to CP/AJ in TIFF and/or JPEG format around that same time.

20.     The TIFF and/or JPEG files for each Photograph delivered to CP/AJ contained metadata identifying the copyright owner as Paul Morgan.

**II.     JDV Opted Not to Purchase a License to Use the Photographs.**

21.     On December 6, 2011, Micah Kasman, who was at the time the design director for JDV, emailed Morgan regarding the Photographs and asked, "I'm unsure of the contract you agreed upon. Would we need to license these and what did you arrange for those licensing fees?"

22. On December 7, 2011, Morgan advised Kasman that "the contract was written for use by CPAJ Hotel Lincoln Park Manager, LLC." Morgan stated that the usage granted to CP/AJ did not include advertising, such as "brochures, billboards, travel/hotel websites, magazine and newspaper ads, posters, etc." Morgan stated that JDV would need to purchase the right to use the Photographs, and offered to negotiate a shared-use discount on the price.

23. On December 14, 2011, Morgan emailed Kasman again and reiterated that JDV would need to purchase any rights to use the Photographs, and again offered the shared-use discount. Morgan stated, "If you would like to go in on the shoot with them and receive the discount I have offered Joie de Vivre, a decision would need to be made this week. You can still purchase the rights after this week, but unfortunately I will not be able to process the shared-use discount."

24. Upon information and belief, CP/AJ advised Kasman that JDV could use the Photographs without entering into a license agreement with Morgan. By doing so, CP/AJ assigned and/or transferred its rights under the Contract in breach of the Contract. As a result, all rights granted to CP/AJ immediately reverted back to Morgan.

25. Neither CP/AJ, JDV, nor Kasman purchased any rights from Morgan for JDV to use the Photographs.

26. On February 7, 2012, Kasman declined on behalf of JDV to purchase a license to use the Photographs, stating, "I think we're all set, thanks Paul."

III. **CP/AJ's and JDV's Unauthorized Use of the Photographs.**

27. Upon information and belief, beginning at least as early as December 20, 2012, JDV and CP/AJ have published the Photographs electronically on a variety of websites under the control of CP/AJ and JDV without the knowledge or authorization of Morgan or the current

owner of the copyrights. Each publication is outside the scope of the Contract and License granted to CP/AJ.

28. Upon information and belief, beginning at least as early as December 20, 2012, JDV and CP/AJ have distributed the Photographs to third-party websites, including travel websites and discount coupon websites, for publication of the Photographs on those websites without the knowledge or authorization of Morgan or the current owner of the copyrights. Such distribution is outside the scope of the Contract and License granted to CP/AJ.

29. Upon information and belief, beginning at least as early as December 20, 2012, JDV and CP/AJ have distributed the Photographs to marketing companies, including Leonardo Worldwide Corporation, for publication of the Photographs on websites without the knowledge or authorization of Morgan or the current owner of the copyrights. Such distribution is outside the scope of the Contract and License granted to CP/AJ

**IV. Boka's Unauthorized Use of the Photographs.**

30. Boka manages the J. Parker, which is a rooftop bar and restaurant on the 13th floor of the Hotel Lincoln.

31. The Contract does not grant Boka any rights to use the Photographs. Boka did not purchase any rights to use the Photographs.

32. Boka published one or more of the Photographs on websites directly under its control without the knowledge or authorization of Morgan or the current owner of the copyrights, including www.jparkerchicago.com, www.bokagrp.com/jparker.php, and on its Facebook page. Boka did not have the rights for such publications, and such publications were outside the scope of usages granted to CP/AJ in the Contract and License.

33.     Boka removed, altered, and provided false copyright management information with respect to the Photographs.

34.     Boka included one or more of the Photographs in its "media kit" for the J. Parker. The media kit is available for download at http://bokagrp.com/mediakit.php.  By including one or more of the Photographs in its media kit for the J. Parker, Boka distributed the Photograph(s) without the knowledge or authorization of Morgan or the current owner of the copyrights and made the Photographs available for download by third parties who, in turn, could publish the Photograph(s) without the knowledge or authorization of Morgan or the current owner of the copyrights.

35.     Upon information and belief, CP/AJ advised Boka that it could publish the Photographs.  By doing so, CP/AJ assigned and/or transferred its rights under the Contract in breach of the Contract.  As a result, all rights granted to CP/AJ immediately reverted back to Morgan.

**V.      CP/AJ Sold the Hotel Lincoln to W-AJ in 2013.**

36.     Upon information and belief, around August 2013, W-AJ acquired all of, or a majority stake in, the Hotel Lincoln from CP/AJ.

37.     Following the sale of the Hotel Lincoln to W-AJ, JDV remained the manager of the Hotel Lincoln and served the interests of W-AJ.  In that capacity, JDV was W-AJ's agent.

38.     The Contract does not grant W-AJ any rights to use the Photographs.  W-AJ did not purchase any rights to use the Photographs.

39.     Following the sale of the Hotel Lincoln to W-AJ, W-AJ and JDV continued to publish the Photographs electronically on a variety of websites under the control of W-AJ and JDV without the knowledge or authorization of Morgan or the current owner of the copyrights.

7

W-AJ and JDV did not have the rights for such publications, and such publications are outside the scope of the Contract and License granted to CP/AJ.

40.     Following the sale of the Hotel Lincoln to W-AJ, W-AJ and JDV have continued to distribute the Photographs to third-party websites, including but not limited to travel websites, for publication of the Photographs on those websites without the knowledge or authorization of Morgan or the current owner of the copyrights. W-AJ and JDV do not have the rights for such distribution, and such distribution is outside the scope of the Contract and License granted to CP/AJ.

41.     Upon information and belief, JDV and W-AJ have distributed the Photographs to marketing companies, including Leonardo Worldwide Corporation, for publication of the Photographs on websites without the knowledge or authorization of Morgan or the current owner of the copyrights. Such distribution is outside the scope of the Contract and License granted to CP/AJ

42.     The unauthorized publication and distribution of the Photographs by all Defendants has contributed to the unauthorized publication and distribution of the photographs by third party websites that are not under the direct control of the Defendants.

**VIII.   The Unauthorized Publication and Distribution of the Photographs Has Generated Profits for the Defendants.**

43.     Since opening in 2012, the Hotel Lincoln has generated profits each year. At least a portion of those profits are attributable to the unauthorized distribution and publication of the Photographs by the Defendants.

44.     Since opening in 2012, the J. Parker has generated profits. At least a portion of those profits are attributable to the unauthorized distribution and publication of the Photographs by the Defendants.

8

45. Hotel Lincoln opened around March 2012. By the time that the Hotel Lincoln opened, it had exceeded $500,000.00 in preopening bookings.

46. All or some of Hotel Lincoln's preopening bookings were made through dozens of websites with which CP/AJ or JDV had contracted and partnered. Those websites include but are not limited to Expedia.com and Bloomspot.com.

47. Since opening in 2012, a portion of room reservations made at the Hotel Lincoln were through third party travel websites that published the Photographs in violation of the Contract and the License. CP/AJ, JDV, and W-AJ have contributed to those infringements and profited and continue to profit as a result of those infringements.

48. When CP/AJ sold its interest in the Hotel Lincoln to W-AJ in 2013, CP/AJ realized a profit.

**X.    Morgan's Requests to Cease the Unauthorized Publication and Distribution of the Photographs.**

49. Morgan first discovered the unauthorized use of his Photographs on some third party sites on December 20, 2012. Later, he discovered additional unauthorized uses of his Photographs. It is unknown at this time when each unauthorized use began.

50. Morgan contacted JDV in April 2014 and requested that it remove all Photographs from all websites under its control. Soon after, Kelly Kruse, Senior Creative Services Manager for Commune Hotels & Resorts, emailed Morgan and stated that all unauthorized images would be pulled from JDV's marketing channels.

51. On May 12, 2014, Morgan emailed Kruse asking for an update and explaining that JDV was still using images without authorization.

52. Kruse emailed Morgan on June 4, stating, "The Hotel Lincoln has been working hard at removing all of the imagery from third party sites and should be complete soon. If there

9

is any sites that still include your imagery please let us know and we will make sure to follow up with the partner.  We are happy to work with you on making sure this is taken care of."

53.     On June 9, 2014, Kruse emailed Morgan and stated, "All the images should be taken down at this point.  Please let me know if there is a site that you see using these so we can take care of it immediately."

54.     In April 2015, Morgan again notified JDV that the Photographs were being published on websites and requested JDV to remove the Photographs. On April 17, 2015, JDV stated in an email to Morgan that it had removed all of the Photographs from websites under its control.

55.     On April 27, 2015, one or more of the Photographs was still published on one or more websites controlled by JDV.

**XI.     Registration of the Copyrighted Material and Assignment of Ownership and Rights.**

56.     On October 2, 2014, the Photographs were group-registered with the U.S. Register of Copyrights, titled, "393 published images Vol. 1 July 2014."  A copy of the Certificate of Registration, No. VA 1-925-987, is attached as Exhibit C.

57.     Morgan owned the copyrights to the Photographs until December 15, 2015, at which time he assigned the copyrights to Paul Morgan Photography, LLC.

58.     Morgan assigned his rights under the Contract to Paul Morgan Photography, LLC on December 15, 2015.

**COUNT I – Copyright Infringement**
**Against Each Defendant**

59.     Plaintiff hereby incorporates and realleges Paragraphs 1–58 as though fully stated herein Paragraph 59.

10

60.     Defendants did not have permission or rights granted from the copyright owner to reproduce, distribute, or display the Photographs.

61.     Defendants and/or their agents reproduced and/or distributed and/or displayed the copyrighted Photographs, or caused the copyrighted Photographs to be reproduced and/or distributed and/or displayed, in violation of the Copyright Act, 17 U.S.C. § 101 et seq.

62.     Defendants' acts constitute willful and deliberate infringement of Plaintiff's copyrights that has caused and is causing irreparable harm and damage to Plaintiff.

63.     Also, CP/AJ transferred and/or assigned its rights to use the Photographs to JDV and/or W-AJ and/or Boka.  Upon transfer and/or assignment of its rights under the contract, all of CP/AJ's contractual rights immediately reverted to Morgan.  Nevertheless, CP/AJ continued to use the Photographs.  Such use was not authorized by the copyright owner and constituted infringement.

64.     Plaintiff is entitled to recover from Defendants the damages, including attorneys' fees and costs, that Plaintiff has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of violation alleged above or at Plaintiff's election to recover statutory damages, if applicable.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained, but will be established according to proof at trial.

**COUNT II – Contributory Copyright Infringement
Against Each of JDV, CP/AJ, and W-AJ**

65.     Plaintiff hereby incorporates and realleges Paragraphs 1–64 as though fully stated herein Paragraph 65.

66.     JDV, CP/AJ, and/or W-AJ intentionally induced or encouraged other defendants and/or third-parties, including third-party websites and online couponing companies, to

reproduce, distribute, or display the Photographs, even though Defendants did not have any right to do so.

67.     JDV, CP/AJ, and/or W-AJ knowingly took steps that were substantially certain to result in direct infringement, including distributing the Photographs to other entities that did not have permission or a license to reproduce or display the Photographs knowing that those entities would reproduce or display the Photographs in violation of the copyrights.

68.     JDV, CP/AJ, and/or W-AJ made a material contribution to the direct infringement.

69.     JDV, CP/AJ, and/or W-AJ earned a profit as a result of other entities reproducing or displaying the Photographs in violation of the copyrights.

70.     JDV's, CP/AJ's, and/or W-AJ's acts, each individually, constitute contributory copyright infringement in violation the Copyright Act, 17 U.S.C. § 101 et seq.

71.     Plaintiff has suffered and continues to suffer financial loss as a result of Defendants' conduct.

72.     Plaintiff is entitled to recover from JDV, CP/AJ, and/or W-AJ the damages, including attorneys' fees and costs, that Plaintiff has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of violation alleged above or at Plaintiff's election to recover statutory damages, if applicable.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained, but will be established according to proof at trial.

### COUNT III – Vicarious Copyright Infringement
### Against Each of JDV, CP/AJ, and W-AJ

73.     Plaintiff hereby incorporates and realleges Paragraphs 1–72 as though fully stated herein Paragraph 73.

74.     JDV, CP/AJ, and/or W-AJ profited and continue to profit from the direct copyright infringement of the Photographs by other entities, like third-party travel websites and online coupon sites, while declining to exercise a right to stop or limit the infringing acts.

75.     JDV, CP/AJ, and/or W-AJ profited and continue to profit from the direct copyright infringement of the Photographs by Boka while declining to exercise a right to stop or limit the infringing acts.

76.     JDV, CP/AJ, and/or W-AJ profited and continue to profit from the direct copyright infringement of third-party marketing companies, like Leonardo Worldwide Corporation, while declining to exercise a right to stop or limit the infringing acts.

77.     CP/AJ and/or W-AJ profited and continue to profit from the direct copyright infringement of the Photographs by JDV while declining to exercise a right to stop or limit the infringing acts.

78.     JDV, CP/AJ, and/or W-AJ had and have the right and ability to supervise the infringing activity and also had a direct financial interest in such activities.

79.     JDV's, CP/AJ's, and/or W-AJ's acts, each individually, constitute vicarious copyright infringement in violation the Copyright Act, 17 U.S.C. § 101 et seq.

80.     Plaintiff has suffered and continues to suffer financial loss as a result of Defendants' conduct.

81.     Plaintiff is entitled to recover from JDV, CP/AJ, and/or W-AJ the damages, including attorneys' fees and costs, that Plaintiff has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of violation alleged above or at Plaintiff's election to recover statutory damages, if applicable.  At present, the amount of

such damages, gains, profits, and advantages cannot be fully ascertained, but will be established according to proof at trial.

## COUNT IV – Violation of the Digital Millennium Copyright Act ("DMCA") Against Each Defendant

82.     Plaintiff hereby incorporates and realleges Paragraphs 1–81 as though fully stated herein Paragraph 82.

83.     The TIFF and/or JPEG files that Morgan delivered to CP/AJ contained metadata identifying the copyright owner as Paul Morgan.

84.     This metadata constitutes "copyright management information," as defined in 17 U.S.C. § 1202(c).

85.     Upon information and belief, Defendants, without the authority of the copyright owner or law, intentionally removed and/or altered the copyright management information from the TIFF and/or JPEG files, and distributed the Photographs knowing that the copyright management information had been removed or altered.

86.     Defendants thereafter reproduced and distributed to and displayed the Photographs—lacking the metadata—on its websites and third-party websites.

87.     JDV, CP/AJ, and/or W-AJ knowingly and with the intent to induce, enable, facilitate, or conceal infringement provided and distributed copyright management information that falsely identified the owner of the copyright as "Leonardo."

88.     Boka knowingly and with the intent to induce, enable, facilitate, or conceal infringement provided and distributed copyright management information that falsely identified the owner of the copyright as "Boka Restaurant Group."

89.     Defendants committed these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate, or conceal an infringement under the Copyright Act and the DMCA.

90.     Defendants' acts violated the DMCA, 17 U.S.C. § 1202.

91.     Plaintiff has suffered and continues to suffer financial loss as a result of Defendants' conduct.

92.     Plaintiff is entitled to recover from Defendants the damages, including attorneys' fees and costs, that Plaintiff has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of violation alleged above or at Plaintiff's election to recover statutory damages, if applicable.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained, but will be established according to proof at trial.

### COUNT V – Breach of Contract
### Against CP/AJ

93.     Plaintiff hereby incorporates and realleges Paragraphs 1–92 as though fully stated herein Paragraph 93.

94.     There existed a valid and enforceable contract between CP/AJ and Morgan, attached as Exhibit A to this complaint.

95.     The contact allowed for limited use of the Photographs by CP/AJ.  CP/AJ used the Photographs outside the scope of the use granted by the contract.  In doing so, CP/AJ breached the contract.

96.     Also, the contract precluded CP/AJ from transferring or assigning its rights under the contract without the consent of Photographer.  Neither Morgan nor Plaintiff granted consent to CP/AJ to transfer or assign its rights under the contract.  Nevertheless, CP/AJ directed JDV

and/or W-AJ and/or Boka to copy and display the Photographs. CP/AJ transferred and/or assigned its rights under the contract to JDV and/or W-AJ and/or Boka and breached the contract.

97.     As a result, Morgan suffered and continues to suffer financial loss as a result of CP/AJ's breach of contract.

98.     Plaintiff, as assignee of the contract rights, suffered and continues to suffer financial loss as a result of CP/AJ breach of contract.

99.     Plaintiff is entitled to compensatory damages in an amount equal to financial losses suffered by Morgan and Plaintiff as a result of CP/AJ's breach of contract.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

(A)     Permanently enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with the Defendants from:

    (1)     reproducing, distributing, or displaying the Photographs;
    (2)     contributing to or inducing any third party to reproduce, distribute, or display the Photographs;
    (3)     removing or altering copyright management information, or distributing copyright management information that falsely identifies ownership of the copyright; and

(B)     Directing Defendants to:

    (1)     Turn over or destroy all copies, including all electronic copies, of the Photographs;
    (2)     Pay to Plaintiff all the actual damages it and Morgan suffered as a result of the acts of Defendants complained of herein, together with prejudgment interest;
    (3)     Account for and pay to Plaintiff all profits derived by Defendants from their acts complained of herein, together with prejudgment interest;
    (4)     At Plaintiff's election, pay statutory damages based upon Defendants' acts of infringement that began following Plaintiff's registration of copyrights in the Photographs;
    (5)     At Plaintiff's election, pay an increased award for Plaintiff's statutory damages for Defendants' willfully infringing acts in an amount the court deems appropriate;

(6)     Pay Plaintiff's reasonable attorneys' fees and costs in this action; and

(C)     Awarding Plaintiff such further relief as this Court deems just and appropriate.

### JURY DEMAND

Plaintiff demands trial by jury on all issues triable by jury.


**PAUL MORGAN PHOTOGRAPHY, LLC**

*/s/ Benjamin M. Jacobi*
One of its attorneys


Benjamin M. Jacobi, #6296811
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone:  847-291-0200
Facsimile:  847-291-9230
bjacobi@okgc.com